IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RICHARD DAVIS,                              )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )        CASE NO. 2:21-CV-252-KFP
                                            )
KILOLO KIJAKAZI,                            )
Acting Commissioner of Social Security,     )
                                            )
        Defendant.                          )

**MEMORANDUM OPINION AND ORDER**

Plaintiff seeks review of the Social Security Administration's decision denying his

application for Supplemental Security Income ("SSI") and Disability Insurance Benefits.

The undersigned, having considered the record, briefs, applicable regulations, and caselaw,

finds the decision of the Commissioner of Social Security must be AFFIRMED.

**I.      STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a

narrow one. The scope is limited to determining whether substantial evidence in the record

as a whole supports the Commissioner's decision and whether the correct legal standards

were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Substantial evidence is more than a scintilla but less than a preponderance. *Martin v.*

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or

substitute its judgment for that of the Commissioner, and, even if the evidence

preponderates against the Commissioner's factual findings, the Court must affirm if the

decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II.    PROCEDURAL BACKGROUND

Plaintiff was 26 years old when the Administrative Law Judge rendered a decision finding him not disabled. R. 25, 27. Plaintiff alleged disability due to schizophrenia, depression, anxiety, ADHD, agoraphobia, paranoia, anger issues, insomnia, hypertension, and scoliosis. R. 124. His initial application was denied, and he requested a hearing before an ALJ. *See* R. 4–5. After a hearing, the ALJ issued a decision finding Plaintiff not disabled. R. 12, 27. The Appeals Council declined review, making the Commissioner's final decision ripe for judicial review. R. 1–3; *see* 42 U.S.C. § 405(g).

## III.    THE ALJ'S DECISION

The ALJ found that Plaintiff had severe impairments of cannabis abuse, generalized anxiety disorder, ADHD, and major depressive disorder but that he did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 17–18. He then found that Plaintiff has the residual functional capacity to perform a full range of work but limited him to simple tasks and decisions, occasional changes in the work setting, and "brief incidental interactions with the public." R. 20.

The ALJ determined that Plaintiff had no relevant past work experience. R. 25. Considering Plaintiff's age, education, lack of work experience, and RFC, the ALJ determined that there were other jobs in the national economy that Plaintiff could perform, including a rod assembler, a bundle clerk weigher, or an inserter. *Id.* The ALJ ultimately

concluded that Plaintiff had not been under a disability from the alleged onset date, November 4, 2020. R. 27.

## IV.   DISCUSSION

On appeal, Plaintiff argues the ALJ failed to properly evaluate (1) the medical opinions in determining Plaintiff's mental RFC and (2) Plaintiff's subjective statements.

### A.      The ALJ properly evaluated the medical opinions.

The regulations applicable to claims filed after March 2017 provide the following:

> [T]he ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship), (4) specialization, (5) other factors. *See* 20 C.F.R. § 404.1520(c)(a)-(c) (2020). [In particular, a]n ALJ must explain how he considered the factors of supportability and consistency. [*See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).] The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. *Id*. The ALJ may but is not required to explain how he considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3) (2020).

*Nix v. Saul*, No. 4:20-CV-790-RDP, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021).

An ALJ "is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion.[] Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing *Dyer v. Barnart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

As long as an ALJ "has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached[,]'" the RFC is supported by substantial evidence. *Nichols v. Kijakazi*, No. 3:20-CV-00224-SRW, 2021 WL 4476658, at *7 (M.D. Ala. Sept. 29, 2021) (citing *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016)). "[T]o find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Id.* In fact "an ALJ's RFC assessment need not 'match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ.'" *Boone v. Kijakazi*, No. 1:21-CV-34-JTA, 2022 WL 4133288, at *5 (M.D. Ala. Sept. 12, 2022) (citation omitted).

In his RFC determination, the ALJ considered Plaintiff's testimony that he "experiences delusions and paranoia[,] . . . his mental health issues have affected his ability to leave his residence[,]" and he "had experienced an episode" in light of his treatment records. R. 21–22. After comparing Plaintiff's statements to his treatment records, opinions from the State agency physician, and activities of daily living, the ALJ formulated an RFC that "accommodates the combination of [Plaintiff's] impairments[.]" R. 21. Plaintiff alleges the ALJ erroneously evaluated the medical opinions of Plaintiff's treating psychiatrist, Dr. Amanda Williams, and a non-examining State agency psychologist, Gloria Roque. Doc. 15 at 2–9.

### 1.     The ALJ properly discounted Dr. Williams's opinions.

In March 2020, Dr. Williams opined that Plaintiff had marked limitations in understanding, remembering, and carrying out both simple and detailed instructions; a

marked limitation in making judgments; and an extreme limitation in his ability to interact with the public. R. 631–32. While treating Plaintiff, Dr. Williams determined Plaintiff "clearly should be on disability." R. 651. The ALJ found Dr. Williams's conclusions "offer[ed] only a vague generalization regarding the claimant's ability to work, rather than a complete functional analysis[] indicating specific functional limitations[] with objective findings to support the limitation." R. 24. Overall, the ALJ found these opinions unpersuasive because they are "generally inconsistent with and not supported by" the evidence, Dr. Williams's own evaluation, and Plaintiff's activities of daily living. *Id.*

First, the ALJ found Dr. Williams's opinions to be inconsistent with the record evidence he "described in detail above." *Id.* The ALJ's preceding discussion extensively evaluated Plaintiff's medical records and found, "[they] generally note [a] normal or euthymic mood, relaxed and attentive demeanor, normal speech, intact associations, logical and coherent thought processes without hallucinations or delusions, age-appropriate cognitive functioning and fund of knowledge, full orientation, intact or fair insight and judgment, and no apparent signs of attentional or hyperactive difficulties." R. 22. Aside from worsening periods when Plaintiff was noncompliant or used marijuana, the ALJ determined that Plaintiff's condition largely improved with treatment. R. 22–23.

Plaintiff argues the ALJ erred by not specifically discussing the evidence Dr. Williams relied on to support her opinion. Doc. 15 at 4. But the ALJ references the preceding paragraphs that thoroughly discuss Plaintiff's treatment records. R. 22–24. The regulations only require the ALJ state the persuasiveness of the evidence and discuss the supportability and consistency factors; he did so here. *Nix*, 2021 WL 3089309, at *6. The

ALJ had "no obligation to 'bridge' every piece of evidence he f[ound] inconsistent with [Dr. Williams's] opinions." *Gogel*, 2021 WL 4261218, at *9 (citing *Dyer*, 395 F.3d at 1211).

Second, the ALJ found Dr. Williams's opinions to be inconsistent with and unsupported by Dr. Williams's own evaluations, explaining that they "fail to describe significant clinical abnormalities . . . and generally consistently note improvements in [Plaintiff's] symptoms[.]" R. 24. Dr. Williams's records show that Plaintiff's symptoms were relatively mild: his depression generally remained moderate or improved; his paranoia remained mild; and his anxiety usually remained moderate or improved. *See* R. 634, 640, 646, 653, 659, 678. Plaintiff always denied suicidal and violent thoughts. *See* R. 634, 640, 646, 653, 659, 668, 676, 678. Dr. Williams noted several times that Plaintiff was doing well overall, sometimes by his own admission. R. 634, 646, 653, 659, 678. She acknowledged that Plaintiff consistently appeared well groomed; was always in a good mood; regularly had a calm or euthymic affect; always denied hallucinations; had intact concentration, attention, and memory; and had fair insight and judgment. *See* R. 638, 644, 650, 663, 667–68, 675–76, 682. As the ALJ found, Dr. Williams's own clinical findings are in stark contrast to an individual with marked and severe limitations. *See* R. 24. In his brief, Plaintiff cites several records documenting more severe symptoms to support Dr. Williams's limitations. Doc. 15 at 4. While there may be some evidence in this record that could support a finding favorable to Plaintiff, the ALJ was not required to discuss every piece of it. *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-01053-JHE, 2022 WL 860190, at *6 (N.D. Ala. Mar. 22, 2022) (citing *Dyer*, 395 F.3d at 1211). As to Dr. Williams's

treatment note stating Plaintiff was "clearly disabled" the ALJ properly disregarded it given that the RFC determination is reserved for the Commissioner. *See* 20 C.F.R. § 404.152(d)(1)–(3).

Third, the ALJ found Dr. Williams's opinions to be inconsistent with Plaintiff's activities of daily living. R. 24. In support, he listed Plaintiff's "involvement in activities, such as performing standup comedy acts, spending increased time with friends, playing guitar, and shopping in stores." *Id.* These activities are inconsistent with the expected activity level of an individual who suffers from an extreme limitation in his ability to interact with the public.

The ALJ provided sufficient rationale for discounting Dr. Williams's opinions, and substantial evidence supports his evaluation. *See Nichols*, 2021 WL 4476658, at *7 (citing *Eaton*, 180 F. Supp. 3d at 1055). The ALJ properly articulated his bases for discrediting Dr. Williams's opinions: they were inconsistent with and unsupported by the evidence as a whole. *See* R. 24. In doing so, he complied with the regulations. *See* 20 C.F.R. § 404.1520c(b)(3) (2020).

### 2.     The ALJ properly evaluated Dr. Roque's opinions.

On June 19, 2019, Dr. Roque reviewed Plaintiff's records and determined he was not disabled. R. 123–163. She found that Plaintiff does not have marked and severe impairments in "acquiring and using new work related information[,] . . . attending to and completing tasks[,] . . . interacting with and relating to others[,]" or "adapting to typical changes and challenges[.]" R. 140–41. Dr. Roque opined Plaintiff could understand, remember, and carry out simple instructions; sustain attention to simple, familiar tasks; and

adapt to typical changes and challenges in the work environment. *Id.* Finally, Dr. Roque

offered several recommendations: Plaintiff "would benefit from a flexible schedule[,] . . .

casual supervision[,] . . . his own work area/station[,] . . . a familiar, predictable work

routine[,]" and supportive, encouraging feedback. *Id.*

The ALJ found these opinions partially persuasive because "they are somewhat

consistent with the evidence of record." R. 24. Specifically, he found "there was sufficient

evidence of record to evaluate" Plaintiff's disability insurance claim based on his

"outpatient mental health treatment notes, including multiple mental status examinations

that show relatively benign clinical findings[] on a consistent basis beginning April

2015[.]" *Id.* As for Plaintiff's SSI claim, the ALJ found Dr. Roque's opinion "generally

consistent with the evidence of record, including the hearing testimony, limited and routine

outpatient treatment, and mental status examinations that fail to show significant clinical

abnormalities[.]" *Id.*

Plaintiff's RFC was consistent with Dr. Roque's opinions: the RFC limits Plaintiff

to simple and routine tasks, simple decisions, occasional changes in the work setting, and

occasional interaction with supervisors and coworkers. R. 20. Still, Plaintiff argues the ALJ

erred by not adopting all of Dr. Roque's recommendations, such as the suggestions that

Plaintiff would benefit from a flexible schedule, an isolated work area, and supportive

feedback. *Id.*

This argument fails for several reasons. First, the ALJ was not required to adopt Dr.

Roque's opinions verbatim—Plaintiff's RFC determination was within the province of the

ALJ. *See Boone*, 2022 WL 4133288, at *5 (citation omitted). Second, the regulations

require the ALJ to base the RFC on "all of the relevant medical evidence"—not just one medical opinion. *See* 20 C.F.R. § 416.945(a)(3); *see also Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) ("So long as the ALJ's decision demonstrates to the reviewing court that it considered the [plaintiff's] medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record.") (citing *Dyer*, 395 F.3d at 1211). In other words, the ALJ could not base the RFC on Dr. Roque's opinion alone, but had to base it on the entire record.

Third, the ALJ was not required to incorporate Dr. Roque's recommendations as to the accommodations that might benefit Plaintiff. These were mere suggestions—not medical opinions or limitations. *See McConnell v. Kijakazi*, No. CV-21-00012-B, 2022 WL 4931855, at *8 n.21 (S.D. Ala. Sept. 15, 2022) (the phrase "medical opinion" only refers to "a medical source's statements about what a [plaintiff] can do despite his impairments, and whether there are any limitations in the [plaintiff's] abilities to perform various demands of work and adapt to work-related conditions") (citing 20 C.F.R. § 416.913(a)(2)–(3)); *see also Candy M. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-CV-03752-RDC, 2022 WL 17068042, at *5 (N.D. Ga. Aug. 25, 2022) (statement that plaintiff "'would benefit from intermittent supervision' is not a limitation on her ability to do work but rather a suggestion for how to improve her job performance;" thus, "ALJ was not required to include that opinion in Plaintiff's RFC assessment"). Plaintiff's argument as to the ALJ's insufficient articulation fails for the same reason: these are not medical opinions, so the articulation requirements set out in 20 C.F.R. § 404.1520c(b)(3) do not apply.

In contrast to the argument above, Plaintiff argues that Dr. Roque's statements should be afforded little weight because she did not examine Plaintiff. Doc. 15 at 9. The Court is unpersuaded by this argument. The current regulations abandon the hierarchy of medical opinions, instead opting to focus on the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c(a) (ALJ is not required to "defer or give any specific evidentiary weight . . . to any medical opinion[]"). Dr. Roque's findings were consistent with the record. This consistency assessment was the proper inquiry for the ALJ, and the lack of a physical examination does not impugn that assessment.

Finally, Plaintiff claims that because Dr. Roque reviewed Plaintiff's records over a year prior to the ALJ's decision, "[t]he ALJ here failed to give serious consideration to the later submitted medical records that document worsening of [Plaintiff's] mental functioning." Doc. 15 at 9. In essence, Plaintiff seeks to have the Court focus on evidence that supports Plaintiff's disability determination. At this stage, the Court cannot reweigh the evidence—its only task is to determine whether substantial evidence exists. *Winschel*, 631 F.3d at 1178; *Bloodsworth*, 703 F.2d at 1239. The Court finds that it does.

**B.      The ALJ properly evaluated Plaintiff's subjective statements.**

"A claimant may establish that he has 'a disability through his own testimony of pain or other subjective symptoms.'" *Nye v. Comm'r of Soc. Sec.*, 524 F. App'x 538, 543 (11th Cir. 2013) (citing *Dyer*, 395 F.3d at 1210). When a claimant attempts to prove disability based on his subjective complaints, she must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of her alleged symptoms, or (2) evidence establishing that her medical condition could be

reasonably expected to give rise to her alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Once the plaintiff establishes that she has an impairment that one could reasonably expect would produce her alleged symptoms, the ALJ must then evaluate (1) the claimant's daily activities; (2) the 'duration, frequency, and intensity' of the claimant's symptoms; (3) '[p]recipitating and aggravating factors'; (4) the effectiveness and side effects of any medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms. *Nye*, 524 F. App'x 538, 543 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). Then, the ALJ evaluates the plaintiff's statements in light of the evidence and considers any inconsistencies. 20 C.F.R. § 404.1529(c)(4). If the ALJ decides not to credit a claimant's testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). Subjective complaint credibility is within the province of the ALJ, *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citation omitted), and the Court cannot disturb that finding so long as he clearly articulates it and supports it with substantial evidence. *Id.* (citing *Foote*, 67 F.3d at 1561–62).

Plaintiff claims his impairments impact his capacity to work because they "affect his ability to sleep, talk, remember, complete tasks, concentrate, understand, follow instructions, and get along with others." R. 21. The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent" with the evidence. *Id.* In making this determination, the ALJ

11

compared Plaintiff's subjective statements to his medical records and activities of daily living.

The ALJ found that Plaintiff's subjective statements contradicted most of his medical records. Plaintiff claims he is unable to work because his impairments cause severe anxiety, reclusiveness, paranoia, hallucinations, and the inability to remember or follow instructions. *See* R. 21. Yet, Plaintiff's mental evaluations "were generally within normal limits" and the records reveal Plaintiff's "appropriate grooming, alert and oriented behavior, intact attention and concentration skills, normal fund of knowledge, fair insight and judgment, and no reported suicidal or homicidal ideations." R. 22–23. As the ALJ recognized, the inconsistencies do not stop there: Plaintiff testified that he often needs repeated instructions and reminders, R. 48, 51, but his doctor generally noted an intact memory, R. 18–19; Plaintiff claims to be paralyzed with anxiety, R. 46, 358, but his doctor often noted a euthymic mood and relaxed demeanor, R. 22; and Plaintiff testified to having poor concentration, R. 50–51, yet his records reveal intact attention and concentration. R. 22.

The ALJ also discussed evidence that calls into question the sincerity of Plaintiff's symptoms. R. 22, 374–75. One record reveals Dr. Williams expressed concern that Plaintiff appeared dishonest about his symptoms. R. 374. Additionally, despite Plaintiff's claims of suffering an "episode," the record is devoid of any mental-health related hospitalizations or emergency room visits. R. 22. At the hearing, both Plaintiff and his mother ominously referred to this episode. Plaintiff testified as follows:

Q:      Okay. All right. Now we're talking about from January 2016 all the way up
        until now. Have things gotten better, worse, or have they essentially stayed
        the same?

A:      Well, it - - I guess stayed - - it's - - it stayed back from when I quit it stayed
        bad there up until I had my episode about two years ago and which I would
        say, you know, got worse then and stuff and - -

        . . .

A:      Then I had an episode and I've been, you know, dealing with that stuff.

R. 45. Plaintiff's mother echoed the seriousness of this episode, testifying that "Taylor used

to talk to me all the time before his episode." R. 59. Discussions of this episode suggest

Plaintiff suffered a serious health occurrence likely requiring intensive treatment. The ALJ

clarified that the alleged episode did not result in a hospitalization. Plaintiff argues, "The

ALJ . . . improperly discounted Mr. Davis' claim of mental disability because Plaintiff did

not require emergency room treatment or psychiatric hospitalization[.]" Doc. 15 at 12. But

the ALJ did not make his disability determination based on Plaintiff's lack of

hospitalization—he only discussed it in response to the potentially misleading statements.

R. 22. Indeed, the record contains a plethora of other evidence the ALJ relied on to discredit

Plaintiff.

        For instance, the ALJ stressed that Plaintiff's symptoms improved over time,

especially after Plaintiff began taking psychotropic medications. *Id.* Still, Plaintiff claims,

"The ALJ failed to cite to substantial evidence that [Plaintiff] has had significant or

sustained improvement to a degree that conflicts with this allegations" because "[t]here is

none." Doc. 15 at 14. The Court disagrees. The ALJ explained that Plaintiff's treatment

records from April 2015 through July 2017 show "increased attention span, improved

listening skills, increased ability to listen and complete tasks, less distractibility, improved

ability to concentrate, improved sociability, . . . less forgetfulness[,] . . . normal or euthymic mood, relaxed and attentive demeanor, normal speech, intact associations, [and] logical and coherent thought processes without hallucinations or delusions[.]" R. 22. The ALJ also noted Plaintiff's physicians recognized his improvement: one record revealed Plaintiff was doing "very well" on his psychotropic medications and another revealed he was "doing pretty good."[1] R. 23. In fact, Plaintiff's treating psychiatrist considered terminating therapy due to Plaintiff's lack of symptoms. R. 602, 607. Although a few records were consistent with Plaintiff's claims of hallucinations and memory deficiencies, considering the record as a whole, the ALJ concluded, "the evidence does not support greater mental functional limitations tha[n] those accounted for herein." R. 23.

Importantly, the ALJ recognized Plaintiff's symptoms were more severe during periods of noncompliance. R. 22. For instance, in June 2017, Plaintiff's anxiety appeared to have worsened at a time when Plaintiff opted not to take his medication. R. 22, 342–44, 358. Plaintiff argues, "it is well-known that non-compliance with mental health treatment is frequently a symptom of disability rather than an indication that the conditions are not as severe as otherwise documented[.]" Doc. 15 at 13–14. Had the ALJ discredited Plaintiff's statements based solely on periods of non-compliance, the Court would be more inclined to agree. However, the ALJ's discussion shows he used this evidence to conclude Plaintiff's symptoms are manageable when he complies with treatment.

---

[1] Plaintiff argues, "observations contained in a treating physician's notes that the claimant's condition is improved . . . do not contradict a finding of disability." Doc. 15 at 14. But the ALJ did not rely on these statements to undermine a finding of disability—he did so only to support his conclusion that Plaintiff's symptoms improved with treatment.

The ALJ also considered Plaintiff's activities of daily living and concluded they conflicted with Plaintiff's subjective statements. R. 23–24. As the ALJ explained, Plaintiff claims he cannot work due to increased social anxiety and paranoia, yet he spends time engaging in social media, performing standup comedy, and socializing with friends and family. R. 23. The ALJ recognized that Plaintiff's daily activities also include playing guitar, watching television, and reading the news—all atypical activities for an individual having difficulties remembering or following instructions. R. 23–24, Although Plaintiff sometimes struggled to perform these activities, the ALJ explained that "taken together and considered in conjunction with the above medical evidence, they suggest that [Plaintiff] can perform unskilled work within the [RFC] parameters on a sustained and continuous basis." R. 24.

Plaintiff claims the ALJ put undue weight on his activities of daily living. Doc. 15 at 11. But social security regulations and Eleventh Circuit case law support consideration of daily activities when evaluating a claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) (it is not improper for an ALJ to consider activities of daily living); *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 880 (11th Cir. 2014) (daily activities of managing personal care, preparing meals, shopping, caring for pets, watching television, using a computer, and socializing with others supported ALJ's credibility determination, even though there was ample evidence supporting a contrary conclusion). The ALJ did not put undue weight on Plaintiff's daily activities—he appropriately considered them along with other evidence.

The ALJ carefully compared Plaintiff's subjective statements to the evidence and articulated his considerations. In deciding not to credit Plaintiff's statements, he extensively referenced the medical records and activities of daily living that conflicted with Plaintiff's statements. As such, the ALJ's credibility determination is supported by substantial evidence. Thus, the Court cannot disturb this finding. *Mitchell*, 771 F.3d at 782 (citing *Foote*, 67 F.3d at 1561–62).

## V.    CONCLUSION

For the reasons set forth above, it is ORDERED as follows:

1.    The Commissioner's decision is AFFIRMED.

2.    A final judgment will be entered separately.

DONE this 2nd day of December, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE